**BERTELSEN v. WHITE, Collector of Internal Revenue.**

No. 4683.

District Court, D. Massachusetts.
April 18, 1932.

John W. Lowrance, of Boston, Mass., for plaintiff.

Frederick H. Tarr, U. S. Atty., and J. Duke Smith, Sp. Asst. to U. S. Atty., both of Boston, Mass., for defendant.

BREWSTER, District Judge.

This is a suit against the collector of internal revenue for this district, to recover federal income taxes amounting to $48,613.-55, alleged to have been erroneously assessed upon and illegally collected from the Crowell & Thurlow Steamship Company for the taxable year 1920. The case was heard without jury upon agreed statements of fact.

The defendant has interposed three defenses: (1) That this action is barred by a judgment entered in the Court of Claims upon the petition of this plaintiff against the United States; (2) that the tax for the year 1920 was legally assessed and collected; and (3) that if the tax was illegally exacted it cannot be recovered in an action against this defendant.

The second defense is the one going to the merits of the controversy, and involves the application of section 23 of the Merchant Marine Act of 1920 (46 USCA § 878) or its effect upon the Revenue Act of 1918 (40 Stat. 1057).

If the first defense is good, the plaintiff has lost his rights to attack the validity of the assessment and collection of the 1920 tax, and the court in this suit cannot be asked to again determine the legality of the collection. In that event, it will not be necessary to inquire whether the Commissioner of Internal Revenue erred in applying the provisions of section 23.

I will therefore consider first whether the plaintiff is concluded by the judgment entered upon a petition previously brought by this plaintiff in the Court of Claims.

Section 23 of the Merchant Marine Act 1920, which was effective June 5, 1920 (46 USCA § 878), contains the following provisions:

"§ 878. *Deductions allowed owners of documented vessels of United States for income and excess-profits tax purposes.* The owner of a vessel documented under the laws of the United States * * * be allowed as a deduction for the purpose of ascertaining his net income subject to the war-profits and excess-profits taxes imposed by Title III of the Revenue Act of 1918 an amount equivalent to the net earnings of such vessel during such taxable year, determined in accordance with rules and regulations to be made by the board: Provided, That such owner shall not be entitled to such deduction unless during such taxable year he invested, or set aside under rules and regulations to be made by the board in a trust fund for investment, in the building in shipyards in the United States of new vessels of a type and kind approved by the board, an amount, to be determined by the Secretary of the Treasury and certified by him to the board, equivalent to the war-profits and excess-profits taxes that would have been payable by such owner on account of the net earnings of such vessels but for the deduction allowed under the provisions of this section: Provided further, That at least two-thirds of the cost of any vessel constructed under this paragraph shall be paid for out of the ordinary funds or capital of the person having such vessel constructed. (June 5, 1920, c. 250, § 23, 41 Stat. 997.)"

The essential facts are as follows:

The plaintiff is receiver of the Crowell & Thurlow Steamship Company, which, in 1920, was the owner of vessels documented under the laws of the United States and operating in foreign trade.

It complied with the provisions of section 23 of the Merchant Marine Act, and in determining the income tax for the year 1920 the Commissioner proceeded upon the assumption that the deductible credit of excess profits tax was the amount actually paid by the steamship company rather than the amount that would have been imposed had the vessel not met the requirements of section 23.

The Commissioner, having determined that the 1918 taxes had been over-paid to the amount of $243,599.46, took appropriate steps to apply this sum to the payment of taxes assessed for the years 1917, 1919, and 1920. This action is brought to recover $48,613.55 which was satisfied by crediting that amount from the 1918 overpayment. The plaintiff alleges that this sum was illegally exacted, due to the refusal of the Commissioner to allow as a credit for the purposes of the income tax the amount of the excess profits tax which would have been imposed had the steamship company not complied with section 23.

It is the contention of the defendant that the earlier proceedings in the Court of Claims involved the legality of the 1920 tax, and

that the judgment entered in that case finally settled all controversies respecting the tax for that year, including the controversy presented by the pleadings in the case at bar.

It appears that the plaintiff, on July 7, 1926, filed in the Court of Claims a petition to recover a portion of the 1918 overpayment. In the petition, among other things, it was alleged that $155,909.70 had been erroneously applied by the Commissioner as follows: $37,875.07 to taxes for 1917, $68,279.25 to those for 1919, and $49,752.39 for 1920, all of which taxes were alleged to have been unlawfully determined to be due on account of income and profits taxes for the respective years. We are only concerned with the allegations respecting the 1920 tax. These allegations were to the effect that the claimant denied the right of the Commissioner to apply said sum of $49,752.39 to the extinguishment of any alleged liability of claimant for the year 1920, or any sum in excess of $16,971.34 conceded to be due. While the petition does not state the grounds upon which the denial was based, it appears from a letter, written by the plaintiff's attorney to the general counsel for the Bureau, that the dispute between the taxpayer and the Commissioner over the amount of the 1920 taxes involved the construction of section 23 of the Merchant Marine Act. The government filed a general traverse denying all the allegations of the petition.

In December, 1927, and while these proceedings were pending in the Court of Claims, a settlement of all controversies involved in the suit was proposed on behalf of the taxpayer whereby the controversy respecting the 1917 taxes was to await the outcome of litigation pending in another tribunal. By the terms of the proposed settlement, the United States was to abate $68,279.12 of the 1919 taxes and $414.23 of the 1920 taxes, and the taxpayer was to consent to the application of the 1918 overpayment so far as necessary to the extinguishment of the remaining tax liability for the years 1917, 1919, and 1920. Appropriate adjustments of interest were to be made, and the agreement was to be final except that the taxpayer reserved the right to file a claim for refund with respect to the amount applied to the 1917 tax. This proposed settlement by its express terms included the application of $59,103.85 to the payment of the 1920 taxes, the amount of which I find to have been in issue before the Court of Claims.

The claimant was to deliver a motion to dismiss the suit in the Court of Claims without prejudice to again assert a claim with respect to the 1917 taxes. There was never any formal acceptance of this offer of settlement, but a letter, dated February 15, 1927, written by plaintiff's attorney, leaves no doubt that the proposal was agreed to by the Bureau of Internal Revenue. This letter is significant. It reads as follows:

"Further reference is made to the case No. F-206 in the Court of Claims, Bertelsen, Receiver for Crowell & Thurlow Steamship Company, Claimant, vs. United States of America, and to my letters to you dated December 9 and December 16 proposing a method of settlement of that suit.

"According to the arrangement outlined in said letters and agreed to by your office, there is transmitted herewith our motion to dismiss said suit in the Court of Claims without prejudice to our reassertion, by suit or otherwise, of our claim to receive the sums withheld and applied to the alleged underpayment of taxes for the year 1917.

"It is understood that this motion is to be held in escrow until payment of the refund, including interest duly computed, has been made."

The motion accompanying this letter was in the following terms:

"In the Court of Claims.

"Paul J. Bertelsen, Receiver for Crowell and Thurlow Steamship Company, Claimant, vs. The United States of America.

"No. F-206.

"IV. Plaintiff's Motion to Dismiss Without Prejudice.

"(Filed in open court February 28, 1928)

"Comes now the claimant in the above-entitled cause, by his attorney therein, and moves the Court to dismiss the petition filed July 7, 1926, in said cause, without prejudice, however, to the assertion by the claimant, by suit or otherwise, of its claim to receive the sums withheld and applied to the alleged under-payment by the claimant of taxes for the year 1917, for the reasons as he shows,

"That, since the filing of said petition, all other matters have been satisfactorily adjusted between claimant and the United States.

"[Signed]  Dion S. Birney.
"Attorney for Claimant."

The Commissioner of Internal Revenue accordingly proceeded with a reconsideration of the 1919 tax, and on March 14, 1927, notified the taxpayer of an overassessment of 1919 taxes amounting to $68,279.25. He also

found a small overassessment of 1920 taxes, resulting from the recomputations. The balance of the 1918 overpayment was in due course paid to the claimant.

The motion to dismiss was filed in the court February 28, 1928. The records of the court recite that the plaintiff's motion to dismiss without prejudice was filed and allowed in open court and "petition dismissed without prejudice." Does this dismissal of the earlier suit bar recovery in this action?

I am quite prepared to agree that the offer of settlement proposed by the plaintiff's counsel, although accepted and acted upon by the officials in the Bureau of Internal Revenue, did not comply with section 1106 (b) of the Revenue Act of 1926 (26 USCA § 249 note), Loewy & Son, Inc., v. Commissioner of Internal Revenue (C. C. A.) 31 F.(2d) 652, or with Rev. St. § 3229 (26 USCA § 158), Botany Worsted Mills v. United States, 278 U. S. 282, 49 S. Ct. 129, 73 L. Ed. 379, and that therefore the settlement by itself would not preclude the plaintiff from maintaining this action.

■ It is not the compromise agreement that is relied upon by the government to defeat the rights of the plaintiff, but rather a judgment in a suit which had been entered upon a motion stating in substance that all matters involved in the suit had been satisfactorily adjusted between the claimant and the United States except the controversy respecting the 1917 taxes.

I am persuaded that the entry of "Petition dismissed without prejudice" must be limited by the motion upon which the judgment was entered, with the result that the petition was dismissed without prejudice only as to the plaintiff's rights to again assert a claim to the overpayment applied to liquidate the 1917 taxes. I am convinced that the judgment rendered in the first action was final as to all other matters in issue in the Court of Claims.

■ In United States v. Parker, 120 U. S. 89, 7 S. Ct. 454, 458, 30 L. Ed. 601, the Court points to the distinction between a nonsuit and a retraxit, the latter being an open, voluntary renunciation of the plaintiff's claim in court. It was held that "a judgment of dismissal, when based upon and entered in pursuance of the agreement of the parties, must be understood, in the absence of anything to the contrary expressed in the agreement and contained in the judgment itself, to amount to such an adjustment of the merits of the controversy, by the parties themselves,

through the judgment of the court, as will constitute a defense to another action afterwards brought upon the same cause of action." To the same effect see Conner v. Cornell (C. C. A.) 32 F.(2d) 581; Second National Bank of Saginaw v. United States, 66 Ct. Cl. 166; Second National Bank of Saginaw v. Woodworth (D. C.) 54 F.(2d) 672.

■ The doctrine of res adjudicata applies to a case arising under the internal revenue laws as well as to any other civil action. Old Colony Trust Company v. Commissioner, 279 U. S. 716, 49 S. Ct. 499, 73 L. Ed. 918; Greylock Mills v. White, Collector (D. C.) 55 F.(2d) 704. Nor does the fact that the first suit was against the United States, and the case at bar against the collector of internal revenue, avoid the bar of res adjudicata. Second National Bank of Saginaw v. Woodworth, supra.

■ It is the contention, however, of the plaintiff that, if the dismissal of the petition by the Court of Claims was, in effect, a final judgment upon the merits of the controversy, and rendered res adjudicata all issues raised in that case except those expressly reserved, still the judgment would not bar recovery in this action because the issue here raised was not before the Court of Claims. This contention is based, as I understand it, upon the fact that the suit in the Court of Claims was brought against the United States to recover an overpayment of 1918 taxes, whereas in this case, as the plaintiff argues, the suit is to recover from a collector of internal revenue 1920 taxes illegally exacted. It must be conceded upon the facts that the 1920 taxes were collected by the application of a part of the 1918 overpayment, and, in the Court of Claims as well as in this court, the legality of the acts of the Commissioner in determining the 1920 tax was in issue and was one of the important issues of the case.

While the principal controversy in the Court of Claims centered about the 1919 tax, the petitioner saw fit to bring to that court his dispute with respect to the 1920 tax. He admitted liability for $16,971.34, and challenged the right of the United States to exact any sum in excess of that amount. It is true, as plaintiff points out, that in July, 1926, when the petition was filed in the Court of Claims, the Commissioner had under consideration claims for refund and abatement of 1920 income and profits tax, both original and additional, which claims contain no reference to the Merchant Marine Act; but in October, 1926, the petitioner was notified

that a final audit revealed an overassessment of the 1920 taxes, and that the amount legally due for that year was $177,895.66. Thus it appears that the amount of the 1920 tax had been determined when the plaintiff proposed to settle all controversies respecting the 1917, 1918, 1919, and 1920 taxes, or, to quote from the letter of December 9, 1926, written by plaintiff's attorney, "the entire controversy involved in this suit" (in the Court of Claims). In this determination the Commissioner had deducted, as a credit against income only, $9,698.45 instead of $495,833.77, which the. plaintiff now claims should have been deducted. It is also significant here that in the Bureau's letter of October 21, 1926, there was a computation of the profits tax which would have been payable on account of the net income but for the deduction allowed under section 23 of the Merchant Marine Act (46 USCA § 878). These facts, in connection with the express reference to the Merchant Marine Act in the offer of settlement, leave no room for argument that the parties did not contemplate that the settlement would effectually bar any claim to further refund, or abatement, of the 1920 tax. Not only were the allegations of the petition broad enough to embrace any controversy relative to these taxes, but it appeared that, at the time of the proposal and the consummation of the settlement, the principal dispute over the 1920 taxes arose over the construction, or application, of section 23.

The purpose of the proceedings in the Court of Claims was to recover an overpayment which, as the petitioner alleged, had been credited upon taxes erroneously determined to be due, and I am unable to see how the case could have been disposed of in that court upon its merits without the necessity of determining the validity of the 1920 taxes, as well as those of the other years in dispute.

I can see no escape from the conclusion that the issue presented in the case at bar was included among the issues raised by the pleadings in the Court of Claims, and the judgment was a final determination of these issues, binding upon both parties to the action.

██ ██ Furthermore, it is my opinion that, if the correctness of the amount of the 1920 tax was in any way in question in the proceedings before the Court of Claims, the plaintiff would not be entitled to prevail here, even if we assume that he now, for the first time in court, disputes the correctness of the 1920 tax on the ground that the Commissioner misconstrued section 23 of the Merchant Marine Act. The judgment in the Court of Claims concluded the parties, not only as to every matter which was offered to sustain the claim, but as to any other admissible matter which might have been offered for that purpose. The plaintiff may not "split up his demand and prosecute it by piecemeal, or present only a portion of the grounds upon which special relief is sought, and leave the rest to be presented in a second suit, if the first fail." Sanborn, J.. in Bowe-Burke Mining Co. v. Willcuts (D. C.) 45 F.(2d) 394, 395.

The statutes provide that a final judgment against the claimant on a claim prosecuted in the Court of Claims shall forever bar any further claim or demand against the United States arising out of the matters involved in the controversy. Jud. Code § 179, 28 USCA § 286. Having found that the judgment entered in the earlier case was a final judgment, and that the claim sought to be enforced in the case at bar arose out of matters involved in the earlier controversy, it follows under the statute that this action is barred.

██ The plaintiff . cannot escape the effects of the final disposition of the proceedings brought in the Court of Claims by intimating that the compromise and the subsequent motion for judgment entered thereon were unauthorized. The United States has, in good faith, carried out the terms of the compromise by abating the 1919 tax and paying to the plaintiff the balance of the 1918 overpayment remaining after deducting the credits agreed to, and the plaintiff is now estopped from setting up the claim that the compromise was without authority.

The foregoing conclusions also render it unnecessary for me to consider whether the plaintiff has proceeded against the right party.

Judgment may be entered for the defendant.