**MONTGOMERY et al. v. THOMAS, Collector of Internal Revenue.**

No. 11029.

Circuit Court of Appeals, Fifth Circuit.

Dec. 18, 1944.

Allen Charlton, of Dallas, Tex., and Albert S. Rollins, of Greenville, Tex., for appellants.

Hilbert P. Zarky, Sewall Key, Robert N. Anderson, and Leonard Sarner, Sp. Assts. to the Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and A. W. Christian, Asst. U. S. Atty., of Dallas, Tex., for appellee.

Before HUTCHESON, WALLER, and LEE, Circuit Judges.

LEE, Circuit Judge.

This suit was brought by appellants, P. O'B. Montgomery and his wife, Frances H. Montgomery, for refund of income taxes paid by them as a result of allegedly illegal deficiency assessments for the years 1938 to 1941, both inclusive.

The questions presented are as follows:[1]

1. Whether dividends from a family corporation received by taxpayers' minor children on shares in said corporation paid for with funds donated to said children by taxpayers, were taxable to taxpayers alone.

---

[1] Statutes involved:

Revenue Act of 1938, c. 289, 52 Stat. 447:

"Sec. 22. Gross income

"(a) General definition. 'Gross income' includes gain, profits, and income derived from salaries, wages, or compensation for personal service, * * *."

"Sec. 23. Deductions from gross income

* * * * * *

"(b) Interest. All interest paid or accrued within the taxable year on indebtedness, * * *."

"Sec. 181. Partnership not taxable

"Individuals carrying on business in partnership shall be liable for income tax only in their individual capacity." 26 U.S.C.A. Int.Rev.Code, §§ 22(a), 23(b), 181.

2. Whether dividends received by taxpayers' minor children on shares in other corporations, purchased for said minors by taxpayers with funds received by taxpayers' minor children as dividends on stocks held in said family corporation, were taxable to taxpayers alone.

3. Whether profits from a partnership largely managed by P. O'B. Montgomery and composed of said Montgomery and his two emancipated minor sons were taxable to taxpayers alone.

4. Whether interest paid to taxpayers' minor children for money allegedly borrowed from them was deductible as interest on indebtedness within the provisions of Section 23(b) of the Revenue Act of 1938 and the Internal Revenue Code.

The facts as found by the court below are not in dispute, and, so far as pertinent here, are as follows:

Appellants, residents of Dallas, Texas, are the parents of three children: viz.: William Slack Montgomery, Phillip O'B. Montgomery, Jr., and Frances Montgomery, aged, respectively, on July 1, 1936, about 18 years, 16 years, and 14 years.

On December 30, 1935, P. O'B. Montgomery entered into a contract with the State of Texas for the construction of the State of Texas Building at the Texas Centennial Central Exposition at Dallas, Texas. Among other things, the contract recited: "The same parties for themselves, their heirs, successors, executors, administrators, and assigns, do hereby agree to the full performance of the covenants herein contained."

P. O'B. Montgomery began work and proceeded with it until July 1, 1936. On that date, appellants and C. E. Montgomery organized a corporation for the purpose of contracting for the construction and repairs of buildings, to be known as "P. O'B. Montgomery, Inc.," the incorporators serving as the board of directors, three in number, for the first year. The capital stock was $1,000 and was divided into 3 shares of class "A" voting stock and 97 shares of class "B" nonvoting stock, which could vote only on those matters required by Texas law to be submitted to all stockholders. Two shares of the class "A" stock were subscribed by P. O'B. Montgomery and one share was subscribed by his wife. One share of class "B" stock was subscribed by C. E. Montgomery, and the remaining 96 shares of class "B" stock were sub-

scribed, 32 shares each, by appellants' minor children. All shares had a par value of $10. Appellants paid for the shares subscribed for by them and for the shares issued to their children. The articles of incorporation were filed and approved on July 8, 1936, and on said date were certified as the charter of the corporation by the Secretary of State of Texas.

On July 1, 1936, P. O'B. Montgomery executed an assignment of the contract with the State of Texas to the corporation in consideration of the assumption by the corporation of all losses and liabilities that might thereafter arise in connection with the contract. The assignment further recited that if it should for any reason be held that the contract could not be assigned, then the instrument should be construed as an assignment of profits and the proceeds which might thereafter arise from the contract. The corporation adopted by-laws and kept books of account, minutes of meetings of its board of directors, and a bank account. The state warrants, issued after July 1, 1936, though payable to P. O'B. Montgomery, were, after being cashed by him at a discount, accounted for by him and placed in the corporation's bank account. The board of directors, in December of 1936, declared a dividend of $390 per share on class "A" and class "B" stock, payable in cash on December 21, 1936; and on June 19, 1937, declared a dividend of $289 per share on both stocks, payable in cash on June 21, 1937. The dividends payable on class "B" stock held in the name of the three minor children, in the total sum of $37,440 in December of 1936, and in the total amount of $27,744 in June of 1937, were paid by checks of the corporation to P. O'B. Montgomery, trustee, for each of the children named, and were deposited by Montgomery in his personal bank account, carried in the name of Phillip Montgomery, which was kept separate from his business account.

There was little change in Montgomery's duties and no change in the personnel employed by P. O'B. Montgomery on the contract with the State of Texas after the assignment of the contract by him to P. O'B. Montgomery, Inc., and the turn-over of employees was about the same after as before the assignment. Throughout the life of the corporation P. O'B. Montgomery was president and general manager, and his wife, Frances H. Montgomery, was secretary; they received no compensation for

their services. In addition to completing the State of Texas Building in September of 1936, the corporation unsuccessfully bid on two or three construction jobs during 1936 and 1937. On October 5, 1938, it was dissolved.

On December 30 and 31, 1936, Montgomery purchased for his three children 600 shares of preferred and common stock of other corporations at a total cost of $40,360. In making said purchase he used the dividends belonging to his children received on December 21, 1936, in the sum of $37,440, and an advance out of his own funds of $2,920, which was later reimbursed. Because of objections on the part of the corporations to issuing stock to minors, Montgomery had the stock issued in his own name. On January 30, 1937, he and his wife joined in the execution of a declaration of trust under notarial seal in which they acknowledged that each of the three minor children was the owner of 32 shares of class "B" stock of P. O'B. Montgomery, Inc.; that the 600 shares of stock purchased with the children's dividends were owned by, and held in trust for, them; and that neither of the appellants had any personal ownership or interest in said stocks. An account entitled "Income and Disbursements, P. O'B. Montgomery, Trustee," was kept for the years 1936 to 1940, inclusive, in which were recorded all transactions relating to the trust corpus and income.

Each of the three children filed individual income tax returns for the calendar year 1936, reporting dividends received from P. O'B. Montgomery, Inc., and each filed individual income tax returns for the calendar year 1937, showing dividends received from P. O'B. Montgomery, Inc., in that year, and also dividends received on the stock purchased for them in the other corporations; and the taxes due as shown by such returns were duly paid.

On October 30, 1940, the District Court of Dallas County, Texas, removed the disability of minority from appellants' two sons, and on or about December 30, 1940, an accounting was made to them of their interest in the trust account in the amount of $43,497.57. The daughter had not attained her majority at that time and her interest was retained in the trust account.

On or about June 5, 1940, appellants each filed a gift tax return reporting the gift to each of their children of the 32 shares of stock of P. O'B. Montgomery, Inc. The returns disclosed no gift tax due. These returns were filed at the request of and upon the basis of valuation contended for by an internal revenue agent.

On March 10, 1938, P. O'B. Montgomery borrowed $25,000 from his children and paid interest thereon at 6% per annum until the loan was repaid on December 30, 1940. During each of the years involved, 1938 to 1941, inclusive, each child filed an income tax return disclosing the dividends on the stocks (until sold) held for them and the interest on the loan made to their father, until it was repaid on December 30, 1940.

On the date of and following their emancipation, appellants' sons entered into a written agreement of partnership with their father to engage in the construction business under the name of "P. O'B. Montgomery, Builders-Engineers," in which Mr. Montgomery agreed to place $50,000 cash and each of his two sons agreed to place $25,000 cash, the net profits to be divided in proportion to the original capital contributions; $6,000 of the sons' contributions was paid by appellants. In November of 1940, the partnership entered into written contract with the Federal Government to perform certain work and furnish certain materials in Fort Sam Houston, Texas. The agreement expressly recited that it was between the United States and the partnership composed of P. O'B. Montgomery, William Slack Montgomey, and P. O.'B. Montgomery, Jr. The two bonds attached to it, one a performance bond and one a payment bond, were each signed by the three partners as principals and by a surety. The contract was completed during the year 1941. In that year the partnership also entered into eight other contracts with the Federal Government. Each contract named the members of the partnership and each contract was signed by the partnership by P. O'B. Montgomery, firm member. In addition, each bond furnished with each contract was signed by each member of the partnership as principals and by a surety. Appellants reported one half of the partnership net income for the years 1940 and 1941, and each of the sons reported one fourth of the partnership net income for said years; and taxes due as shown on each of said returns were paid within the time permitted by law.

Upon these facts, the court below made oral observations which formed the basis of

its judgment as follows: "I doubt that there can be any disagreement between us that this step was taken in order to evade income taxes that Mr. and Mrs. Montgomery would be compelled to pay. * * * I realize that the citizen may, without criticism, I think, do that which is legal in the protection of his own interest, in the matter of payment of taxes, as well as in any other business. It must be conceded, however, that the income tax is levied against the earner of the income which is the basis for the tax and I do not find in here anything that indicates that either one of these children did anything to justify the conclusion or thought, either judicial or otherwise, rationally, that entitled them or either of them, to what they received from their father and what they doubtless would have received from their father, had not the so-called corporation, so-called partnership, and so-called trust, in their various peregrinations, been indulged. * * * the dominant purpose of the law is the taxation of the income to the one who earns it."

We cannot agree with the conclusions thus expressed by the court below. In Commissioner of Internal Revenue v. Montgomery, 144 F.2d 313, 315, we had occasion to pass upon the corporation organized in 1936 by Montgomery and his wife, and the assignment to it of the contract Montgomery had with the State of Texas; and, as did the Tax Court, 1 T.C. 1000, before us, we held "that the corporation was legally and regularly organized, for no fraudulent purpose"; that "the corporation is [was] owned principally by stockholders other than Montgomery"; that "If we would attempt to look through the corporation we would mainly see not this taxpayer, but his children"; that "Montgomery made no short term gift to his children with reversion to himself. He gave absolutely and finally the shares of stock." We also said: "The control he and his wife had over the corporation was in their right as stockholders and directors, and subject to the law regulating those relationships, and to the power of a court of equity if abused." The argument that the profits of the corporation were in reality but the fruits of P. O'B. Montgomery's personal enterprise was fully considered and flatly rejected in the previous decision of this court with this language:

"So also the profit, whether the contract be regarded as a gift or a thing sold to the corporation, was not Montgomery's profit personally.

"If the income had been pay for Montgomery's personal services the case would be otherwise, for by no sort of assignment or prior arrangement, which is not a bona fide hiring or partnership, can one be divorced from his personal earnings as his taxable income. * * * What the State paid was not as compensation for his time and effort, but for the materials and labor and the building that was produced. If anyone owed him for his services it was the corporation for which he acted."

The facts found by the court below show conclusively that the children received from P. O'B. Montgomery, Inc., dividends from stock owned by them in that corporation. This court, in Commissioner v. Montgomery, supra, considered and established the legality of the corporation and to whom its earnings belonged and by whom the tax on its earnings was due. These questions were settled in that litigation between the same parties who are litigants here. In that case we held that the dividends of the corporation belonged to its stockholders and not to appellants. Appellee seeks to get around the effect of that case by stating that the doctrine of res judicata is not applicable for the reason that different tax years are involved in this suit from that involved in that suit; but the question of the legality of the corporation, and by whom the tax on the dividends declared was due, are common questions controlled by the identical facts, and the circumstance that they arise here in connection with different tax years in no wise affects the estoppel resulting from the decision in the former case.

In Tait v. Western Maryland R. Co., 289 U.S. 620, 53 S.Ct. 706, 707, 77 L.Ed. 1405, the court said:

"This court has repeatedly applied the doctrine of res judicata in actions concerning state taxes, holding the parties concluded in a suit for one year's tax as to the right or question adjudicated by a former judgment respecting the tax of an earlier year. [City of] New Orleans v. Citizens' Bank, 167 U.S. 371, 17 S.Ct. 905, 42 L.Ed. 202; Third National Bank v. Stone, 174 U.S. 432, 19 S.Ct. 759, 43 L.Ed. 1035; Baldwin v. Maryland, 179 U.S. 220, 21 S.Ct. 105, 45 L.Ed. 160; Deposit Bank v. Frankfort, 191 U.S. 499, 24 S.Ct. 154, 48 L.Ed. 276.

Compare United States v. Stone & Downer Co., 274 U.S. 225, 230, 231, 47 S.Ct. 616, 71 L.Ed. 1013. The public policy upon which the rule is founded has been said to apply with equal force to the sovereign's demand and the claims of private citizens. Alteration of the law in this respect is a matter for the law-making body rather than the courts. [City of] New Orleans v. Citizens' Bank, 167 U.S. 398, 399, 17 S.Ct. 905, 42 L. Ed. 202. It cannot be supposed that Congress was oblivious of the scope of the doctrine, and in the absence of a clear declaration of such purpose, we will not infer from the annual nature of the exaction an intent to abolish the rule in this class of cases.

\* \* \* \* \* \*

"We think, however, that where a question has been adjudged as between a taxpayer and the government or its official agent, the Commissioner, the collector, being an official inferior in authority, and acting under them, is in such privity with them that he is estopped by the judgment. See Second National Bank v. Woodworth, D.C., 54 F.2d 672; Bertelsen v. White, D. C., 58 F.2d 792."

In City of New Orleans v. Citizens' Bank, 167 U.S. 371, 17 S.Ct. 905, the syllabus in the case as reported in 42 L.Ed. 202 is as follows:

"3. A judgment that a tax is entirely void and must be canceled, without reducing the amount of the tax, where the only relief prayed was the cancellation upon the sole ground that the property was exempt, although there was an allegation that the assessments were excessive, is res judicata as to the existence of the exemption.

"4. The estoppel of a judgment does not depend upon the question whether or not there is the same demand in both cases, but it exists, even although there be different demands, when the question upon which the recovery of the second demand depends has, under identical circumstances and conditions, been previously concluded by a judgment between the parties or their privies.

"5. A decision that the tax for a certain year is void because the property is exempt is res judicata as to the tax of a subsequent year when the same question of exemption is presented on the same facts."

Appellants urge, and we think correctly, that the 600 shares of stock in other corporations purchased by P. O'B. Montgomery for his minor children in De-

cember of 1936, though title was taken in his name to facilitate the handling thereof, was the property of said children for the reason that said stock was paid for from the dividends received by the minors as shareholders in P. O'B. Montgomery, Inc. Under Texas law: "Where one buys land [property] with the money of another and takes the deed [title] in his own name, a trust results in favor of the person whose money was employed in making the purchase. The latter is the equitable owner of the land [property], and the purchaser is a mere trustee and holds for the benefit of him who paid the purchase money." 42 Texas Jurisprudence 637.

Montgomery and his wife laid no claim to the stock purchased with funds belonging to their children; on the contrary they executed a declaration of trust in which they acknowledged that the stock so purchased was the property of their children, purchased with the children's money and held in trust for them, in which appellants had no personal ownership or interest. Under these circumstances the 600 shares of stock were clearly the property of the children, and the dividends from said stocks, though received by their father, were likewise unquestionably their property and their income.

We also agree with the appellants that there is nothing in the facts to warrant the conclusion that the partnership, organized by P. O'B. Montgomery and his two sons in October of 1940, following the removal of the disability of minority from the sons, was not what it purported to be, a real partnership. The facts show that the two sons actually contributed in excess of $43,000 of their own funds to the capital structure of this partnership. The contracts entered into by the partnership with the Government during the years 1940 and 1941 conclusively show that all three partners took part therein, and that each signed as principal the bonds executed in connection with these contracts. The partnership agreement complied with Texas law, and the fact that the partners participated in the net profits in proportion to the capital contribution by each, rather than upon the basis of the time personally contributed by each, we think is immaterial. The sons invested more than $43,000 in cash in the partnership. As partners they became liable personally on all obligations entered into by the partnership. We find nothing in

the agreement or in the facts as found by the court below to warrant the conclusion that the partnership was a sham. Nor does the fact that P. O'B. Montgomery exercised a large measure of control over the partnership business make its business his business or its income his income. See Scherer v. Commissioner of Internal Revenue, 3 T.C. 776, and authorities therein cited; Johnston v. Commissioner of Internal Revenue, 3 T.C. 799; Potter v. Commissioner of Internal Revenue, 47 B.T.A. 607; Humphreys v. Commissioner of Internal Revenue, 2 Cir., 88 F.2d 430.

■ This brings us to the fourth question, namely, the payment by P. O'B. Montgomery of interest on money borrowed from his children. The court below found "that P. O'B. Montgomery, on March 10, 1938, borrowed $25,000 from his children and paid interest thereon at 6% per annum until the loan was repaid on December 30, 1940." The correctness of this finding is not challenged by appellee. The fact that he borrowed money from his children is the sole factor creating suspicion. Had he borrowed from a bank, no question would have been raised. That he actually borrowed the money is conceded; when conceded, his obligation to pay interest until the time he repaid the loan follows as a matter of course.

■ The court below concluded that appellants acted in these several matters merely to evade taxes. As stated in Helvering v. Gregory, 2 Cir., 69 F.2d 809, 810: "A transaction, otherwise within an exception of the tax law, does not lose its immunity, because it is actuated by a desire to avoid * * * taxation."

The general rule is in accord with that expressed in Johnson v. Commissioner of Internal Revenue, 2 Cir., 86 F.2d 710: "Legal transactions cannot be upset merely because parties have entered into them for purpose of minimizing or avoiding taxes which might otherwise accrue."

Nothing done by appellants was illegal. There is no evidence of any sham or any fraud. Everything done was real. The Commissioner's determination that the income received by appellants' children during the years referred to was taxable to appellants was erroneous, and the deficiency assessments based thereon are without support in law.

Reversed and remanded.