## CURRAN v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8822.

Circuit Court of Appeals, Eighth Circuit.
April 6, 1931.

Bernard J. Thole, of St. Louis, Mo., for appellant.

S. Dee Hanson, Sp. Asst. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Allin H. Pierce, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for appellee.

Before STONE and GARDNER, Circuit Judges, and WYMAN, District Judge.

STONE, Circuit Judge.

This is a petition to review a redetermination of the Board of Tax Appeals sustaining a deficiency of $26,876.67 in the individual income taxes of petitioner for the year 1921.

This deficiency assessment results from a payment, by way of credit on indebtedness, which came to petitioner through the form of a dividend declared by the Con P. Curran Printing Company on January 15, 1921. The position of the Commissioner is that the above payment to petitioner was a dividend from the above corporation while the contention of petitioner is that it came as his portion of the payment for a valuable building conveyed by him to the corporation. The findings of fact by the Board of Tax Appeals are as follows:

"Findings of Fact.

"The petitioner is a resident of Normandy, Missouri. Until 1920 he owned the entire common capital stock of the Con P. Curran Printing Company, a corporation, and, with his wife, owned the building occupied by the corporation's business. Prior to 1920, the petitioner had borrowed from the corporation until, 1920, he owed the corporation $298,598. The petitioner made a verbal agreement with his wife, that if she died before he did, he would divide his interest in the corporation and the building with their children. She died in May, 1920, and thereafter, in August, 1920, pursuant to the agreement the petitioner gave the children 49 per cent. of the stock of the corporation and retained 51 per cent.

"On October 9, 1920, the petitioner deeded the building to the corporation, the deed reciting a consideration of $100. The build-

ing and ground originally cost the petitioner $261,000. Later he made various additions. Before the transfer of the property to the corporation, the petitioner sought to have the corporation pay him $400,000 for the property. Discussions were had with other officers of the corporation who objected that the corporation could not make a capital expenditure of that amount and that it was not necessary that the corporation own the building. The petitioner was insistent that he have some money to divide with his children and it was finally agreed that the corporation would pay and he would take $150,000 for the property. The petitioner then executed and delivered the deed to the property which was recorded October 13, 1920. No payment was made to the petitioner on account of the transfer of the property in 1920. On January 15, 1921, at the regular annual meeting of the Board of Directors of the corporation, the following resolution was adopted:

"After the reading and discussion of the Annual Report, Mr. F. W. Corley addressed the chair and expressed the belief that in view of the transfer of the building to the Company, the declaration of a dividend was justified, and that the amount of $150,000 if decided upon as the amount of the dividend, be credited on the books of the company, to the holders of the Common Stock, on the basis of their holdings.

"The amount so credited to the stockholders of record, to earn interest at the rate of 6½% per annum, payable quarterly, and that this dividend, so credited on the books of the Company to said Common Stockholders, cannot be withdrawn, either in part or in whole, except on order of the management.

"Mr. F. W. Corley then made the motion that a dividend be declared of $150,000.00 and the amount pro-rated to the holders of the Common Stock, on the basis of their holdings, and that the prorated amounts be credited on the books of the Company, said amounts to bear interest at the rate of 6½% per annum, and that these credits can only be withdrawn on the order of the management.

"This motion was seconded by Mr. John F. Curran, and upon a vote being taken was found to have carried unanimously.

"The secretary was instructed to notify the stockholders of this credit, by letter, accordingly.

"The petitioner's share of the $150,000 dividend was $76,500, which amount was credited against his indebtedness to the corporation. The petitioner did not include the amount of $76,500 as income in his return for 1921. The respondent, in determining the deficiency for that year, treated the amount as a dividend received in 1921.

"At the time of the resolution of January 15, 1921, the corporation had earnings accumulated in its surplus account in excess of the amount of the dividend. On its return for 1921 the corporation reported $150,000 as a cash dividend."

Upon these findings the Board proceeded as follows:

"Opinion.

"Siefkin: The only issue remaining in this proceeding is one of fact. The corporate action taken indicates that a dividend was declared in 1921 and that the petitioner's portion of that dividend, $76,500 was credited to him by application against indebtedness. All of the documentary evidence points to the amount being a dividend and the respondent has so taxed it to the petitioner.

"The petitioner contends here, however, that his purpose and that of the corporation, which he controlled, was not to receive or declare a dividend but was to receive or pay for certain real estate transferred to the corporation by the petitioner in 1920.

"We are convinced from all the evidence that the petitioner intended that the corporation should pay $150,000 for the property. We also believe that the petitioner was satisfied with the action as taken by the corporation in declaring and paying the dividend. The evidence does not convince us that the steps taken by the corporation, according to the documentary proof, misstated the facts. Except for the difference in the tax imposed, this very dispute, it did not matter to the petitioner how he was paid. Either way his indebtedness to the corporation was reduced by $76,500—and that was all he expected to get, and the testimony that he intended to sell the property (for a price out of which he would get $76,500) does not show that what the corporation did in 1921 was not the thing it purported to be. We are unable to say that the respondent's action was erroneous."

There is no dispute that this payment to petitioner by the corporation was in the form of a corporation dividend, although the dividend was hedged about with restrictions which are entirely unusual. The theory of a dividend is that it shall be payable only from net earnings which are or will be ready

for actual distribution at a definite date provided for in the resolution declaring the dividend. But here, although the actual net earnings of the corporation at the time this dividend was declared were sufficient to pay it, there was no definite date set for payment, but, on the contrary, the amount of the dividend was to be merely credited on the corporation books, to bear interest (payable quarterly) and could not be withdrawn, "except on order of the management."

The form of a transaction is unquestionably pertinent evidence as to what the transaction really is, yet it is not always controlling. This is illustrated by the well-recognized rule that a deed, absolute in form, may be shown to be a mortgage. This same principle is true in applying the revenue statutes unless there is some forbidding expression or necessary implication in the particular statute. When this statute seeks to tax income as derived from corporate dividends, obviously, it means income derived from corporate earnings which accrue to the stockholder solely because of his relation as such to the corporation. It has no design to so tax money paid to the taxpayer as the purchase price of property. The form is not conclusive evidence that the payment really and essentially and solely was a corporate dividend. Doyle v. Mitchell Bros. Co., 247 U. S. 179, 183, et seq., 38 S. Ct. 467, 62 L. Ed. 1054. Even the evidentiary force of form is weakened where, as here, the transaction includes elements unusual or opposed to a transaction which the form would ordinarily or necessarily represent.

Under the evidence (fairly represented by the findings) the Board might have concluded either that there was a gift to the corporation and a real dividend or that there was a sale and a purchase payment which took the form of a dividend. Either view would have been substantially supported by the evidence and, therefore, not disturbed here. The Board found there was a sale. It finds that "it was finally agreed that the corporation would pay and he would take $150,000.00 for the property. The petitioner then executed and delivered the deed to the property which was recorded October 13, 1920. No payment was made to the petitioner on account of the transfer of the property in 1920." The findings following the quotation just made leave no doubt of the view of the Board that this "dividend" for $150,000 declared January 15, 1921, was really in payment of this purchase price. In this connection there is a significant statement in the opinion of the Board on the findings as follows: "We are convinced from all the evidence that the petitioner intended that the corporation should pay $150,000 for the property. We also believe that the petitioner was satisfied with the action as taken by the corporation in declaring and paying the dividend." We think the findings must be construed as being that the property was sold to the corporation, and that payment therefor was through the medium of this "dividend." Further, it may be said that, once given the finding that this transaction was a sale, there is no support in the evidence for any view as to the dividend, except that it was in payment therefor.

Upon such findings, the Board could not properly affirm the action of the Commissioner that this payment to petitioner was taxable as a dividend. The payment was, except in bare form, no dividend, but it was really a payment for property purchased at what the evidence shows was less than its real value.

It follows that the decision of the Board of Tax Appeals should be and is reversed and set aside, and the case remanded, with instructions to determine the tax in controversy in accordance with the view herein expressed.