**SUN PROPERTIES, Inc., Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 15052.**

United States Court of Appeals,
Fifth Circuit.

March 2, 1955.

C. B. Kniskern, Jr., and Douglas D. Felix, Miami, Fla., for appellant.

Louise Foster and Ellis N. Slack, Sp. Assts. to Atty. Gen., H. Brian Holland, Asst. Atty. Gen., E. David Rosen, Asst. U. S. Atty., Miami, Fla., Carolyn R. Just, Sp. Asst. to Atty. Gen., James L. Guilmartin, U. S. Atty., Miami, Fla., for appellee.

Before HUTCHESON, Chief Judge, and RIVES and TUTTLE, Circuit Judges.

TUTTLE, Circuit Judge.

The sole question here is whether the district court erred in holding that the conveyance of a warehouse property to the taxpayer corporation by its sole stockholder, in form a sale, was in substance a contribution to capital. We deem it appropriate here to set forth verbatim the findings of fact and conclusions of law of the district court, 54–2 U. S. Tax Cases ¶9528:

"1. The Court has jurisdiction of the parties and subject matter.

"2. The taxpayer corporation was formed by Henry Peacock, Jr., on August 25, 1947, and the certificate of incorporation was filed on August 27, 1947. On August 29, 1947, three shares of stock were issued, one to Henry Peacock, Jr., and two shares to nominees in exchange for one dollar paid by each to the capital of the corporation.

"3. On August 30, 1947, Mr. Peacock purchased the two shares of stock from the nominees. On September 1, 1947, he deeded two lots to the corporation in return for the remaining seven shares of stock. These lots were listed on the taxpayer's books at a cost of $400.00.

"4. On September 15, 1947, Mr. Peacock transferred to the corporation a warehouse building for an alleged consideration of approximately $125,000.00, which represented the fair market value of the buildings and the land. The agreement under which the transfer was made provided that the alleged consideration of approximately $125,000.00 was to be paid off at the rate of $4,000.00 semi-annually, the first payment to be made on or before December 15, 1947. No interest or down payment was provided, and the purchase price was not secured by a mortgage.

"5. It was customary in the Miami area to charge interest and to provide for a down payment and mortgage on such transactions.

"6. The corporation had only nominal assets other than the warehouse, and the alleged purchase payments were paid out of the rentals received. The current rentals were sufficient to meet the installment payments, pay all expenses, and provide a sizeable profit.

"7. At the time the alleged sale was entered into the warehouse property was very profitable. The net profits in 1947 were in excess of $21,000.00.

"8. The transaction was not the type which would have taken place between parties at arm's length.

"9. In auditing the income tax returns of the corporation for the fiscal years ending August 31, 1948, August 31, 1949, and August 31, 1950, the Commissioner disallowed certain depreciation deductions claimed on the buildings on the ground that the corporation should use the same basis for depreciation as had been used by Mr. Peacock before the transfer. The Commissioner also determined that certain administrative expenses which had been claimed by Mr. Peacock on his individual return should be allotted to various business entities owned by Mr. Peacock, including the tax-

payer corporation. The adjustments were as follows:

| | 1948 | 1949 | 1950 |
|---|---|---|---|
| Depreciation claimed | $8,007.75 | $8,471.95 | $8,471.95 |
| Depreciation disallowed | 5,296.03 | 5,600.76 | 5,600.76 |
| Depreciation allowed | 2,711.72 | 2,871.19 | 2,871.19 |
| Administrative expenses | 2,166.30 | 1,941.81 | 1,945.23 |
| New adjustment allowed | 3,129.73 | 3,658.95 | 3,655.53 |
| Tax Deficiency | 719.83 | 841.55 | 853.19 |

Total deficiency $2,414.57

"10. As a result of these adjustments deficiencies in tax were assessed and were paid as follows: $719.83 in tax and $149.57 interest for fiscal 1948; $841.55 in tax and $124.37 interest for fiscal 1949; and $853.19 in tax and $74.95 interest for fiscal 1950. The payments, totalling $2,763.46, were received by the Collector on May 19, 1952. Claims for refund were filed and were denied by the Commissioner.

"11. It appears that Mr. Peacock would not have entered into the transaction in question except for tax purposes.

"12. The transaction between Sun Properties, Inc., and its sole stockholder achieved no legitimate business purpose, but was made to reduce taxes.

"13. The transaction is not to be recognized as a sale for Federal tax purposes, but represents a transfer of property by the sole stockholder to his corporation as a contribution to capital.

"Conclusions of Law:

"1. The purported sale represented a contribution by Mr. Peacock of the warehouse property to the capital of the corporation, and in accordance with the provisions of Section 113(a)(8)(B) of the Internal Revenue Code, 26 U.S.C.A., the basis for depreciation of the property in the hands of the corporation is the same as it was in the hands of Mr. Peacock, the transferor.

"2. The plaintiff takes nothing by its action, and the defendant recovers its costs herein."

■ The taxpayer does not deny findings 1 through 11, but contends vigorously that findings 12 and 13, as well as the conclusions of law, are in error. Since the findings numbered 12 and 13 are really legal conclusions, we may assume as a true statement of the facts, the findings number 1 through 11; and thus we may consider the matter in hand purely as a question of law, whether those facts authorize the legal conclusion that the taxpayer took deductions for depreciation not permitted by law. The holding below is based on the general principle of tax law that the substance of a transaction rather than its mere form controls tax liability related thereto. To be more precise, its rationale is that this was not a customary or usual sort of sale nor the type which would have taken place between parties at arm's length; the decisive consideration motivating the transaction was the minimizing of taxes; and, in fact, that was the only business purpose of the transaction.[1] Therefore, the court reasoned, it was not a sale at all; and since the increase in assets of the corporation, if not offset by a corresponding increase in liabilities or debts of the corporation, represents an increase in capital, the transaction was in substance an increase in capital. One other consideration which undoubtedly influenced the holding was that this was a "thin" corporation; that is, one with an unusually high ratio of debts to capital on its books.

This rationale is perilously plausible. It is in effect saying to the taxpayer, "You did this under suspicious circumstances; therefore, you did not do it at all, and you are not entitled to any tax advantages." For all of the circumstances relied upon by the Government are consistent both logically and empirically, we think, with the opposite conclusion that the transaction was a sale in fact as well as in form; these are good reasons

[1]. Assuming this last to be true does not affect the outcome in this case as we view it, and so we may properly make this assumption; however, the record shows that Peacock's testimony of other business purposes was material and was not contradicted.

to scrutinize the transaction carefully, but they are not rational proof that it was something other than what it purported to be.

▮ Let us consider first the argument that the transaction was not of the arm's-length sort. We think the law is as it is stated in Prentice-Hall, Federal Taxes ¶28,205:

> "One of the circumstances which may cause the test of substance v. form to be applied is that the transaction involved was not an arm's length transaction * * *. The fact that a transaction was not at arm's length has apparently not of itself been a basis for disregarding the transaction but it does raise the question of whether the substance is the same as the form."

Indeed, we think it may be stated as a general rule that a transaction must *not* be disregarded simply because it was not at arm's length. Staab, 20 T.C. 834. And we think it would be judicial legislation of the most inexcusable kind for a court to create such a rule.

▮ Likewise, the argument that the transaction was not done in the customary manner must go by the board. We know of no general requirement that transactions be entered into in a conventional way for them to be recognized as having the usual tax result. At most, this is only another reason to view the transaction closely for indicia of a different sort of transaction; it is not itself an indicium here of a capital transfer or of a sale, for we may take judicial notice that there are many kinds of capital transactions as well as many debtor-creditor transactions and sales which are highly unconventional. See Stevens, Corporations (2d Ed.) 414–418.

▮ What about the fact, which we may assume to be true, that Peacock's predominant motive was to minimize taxes? In Gregory v. Helvering, 293 U. S. 465, 469, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355, the Supreme Court said that a motive of tax avoidance will not establish liability if the transaction does not do so without it. It may fairly be said that a tax avoidance motive must not be considered as evidence that a transaction is something different from what it purports to be. 8th Ann. N. Y. U. Institute on Federal Taxation 990, 1003:

> "Transactions are properly subject to careful scrutiny when the only ascertainable motive is tax avoidance, just as they are subject to scrutiny when between the members of a family. The error into which the courts have fallen, however, is that they have elevated the rule of careful scrutiny into a rule which changes the substantive effect of the evidence found. Although transactions like these should be carefully studied they should be treated, for tax purposes, on the basis of this careful study, just like tax cases where tax avoidance is not a motive."

And we said in Montgomery v. Thomas, 146 F.2d 76, 81:

> "The general rule is in accord with that expressed in Johnson v. Commissioner of Internal Revenue, 2 Cir., 86 F.2d 710: 'Legal transactions cannot be upset merely because parties have entered into them for purpose of minimizing or avoiding taxes which might otherwise accrue.' "[2]

▮ Nor does the fact that this transaction may not have had any business purpose other than saving taxes, ration-

---

2. See also Allen v. Trust Co. of Georgia, 5 Cir., 149 F.2d 120, 126; Rowan v. United States, 5 Cir., 219 F.2d 51, No. 15167, Prentice-Hall, Federal Taxes ¶28,-204; Gregory v. Helvering, supra [293 U.S. 465, 55 S.Ct. 267.]: "The legal right of a taxpayer to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits, cannot be doubted. * * * But the question for determination is whether what was done, apart from the tax motive, was the thing which the statute intended. * * * "

ally imply that it was not a sale. No cases require that a *sale* have any business purpose beyond that of realizing a capital gain. See Hobby, 2 T.C. 980:

> "The Commissioner argues that petitioner did not in fact sell, or may not be regarded as having sold, the shares. He says that this is because the alleged sale 'had no business purpose.' What kind of 'business purpose' must be shown as necessary to the recognition of a sale is not made clear, and there is no statutory requirement to that effect. The question is not one of purpose, but whether the transactions were in fact what they appear to be in form. Chisholm v. Commissioner, [2 Cir.] 79 F.2d 14. It is true that the sales were made at times when their effect would be to avoid the impact of the forthcoming redemption and the resulting tax. Petitioner, a shareholder, had an unrealized increment in his shares which he wanted to realize. Collaterally he wanted to use a legitimate transaction which would impose upon him the least tax. This is not an interdicted purpose. The primary purpose to realize the gain was a legitimate business purpose, even though it also had a collateral favorable tax effect."

On the other hand, where the issue is the recognition of a corporate reorganization, Gregory v. Helvering, supra, or of a one-man corporation as a separate entity, Higgins v. Smith, 308 U.S. 473, 60 S.Ct. 355, 84 L.Ed. 406, or of a sale and leaseback arrangement, Shaffer Terminals, Inc. v. Commissioner, 9 Cir., 194 F. 2d 539, the existence of an independent business purpose may be very important. However, we would be most reluctant to impose a court-made requirement of a business purpose independent from taking a gain or loss, in determining the genuineness of sales in general, since it is common knowledge that vast numbers of sales have been made and are still being made for the purpose of taking gains and losses at times which provide the optimum tax benefits.[3]

As for the circumstance that taxpayer is a "thin corporation," we do not think this is any ground to infer that this transaction was a contribution to capital. Having treated this matter fully in Rowan v. United States, No. 15,167, we think it unnecessary to repeat what we said on that point.

 So, having scrutinized the transaction closely, as we were bound to do, we find not a particle of proof that it was in fact a contribution to capital nor that it was intended as such. Evidence which may tend to prove that a transaction was a contribution to capital may be of many sorts. We enumerated some of them in the Rowan case, supra; that payments of cash were made for the acquisition of capital assets; that certificates of stock were issued; that repayment was subordinated to other indebtedness;[4] that the maturity date is inordinately postponed; that the parties agree not to enforce collection; that "interest" is to be paid out of earnings only;[5] or that

3. Of course, a separate business purpose of a one-man corporation may have to be shown, under the rule of the Higgins case, supra, for it to be recognized as a separate entity; but here the record is clear that the corporation itself had a business purpose, that it actually operated and provided several practical advantages to its sole owner. The issue whether the corporation should be recognized as a separate entity, however, is not before us on this record.

4. Here, there was no subordination to general creditors. The fact that Peacock did not record his retained security interest in the warehouse, which would result in the subordination of his interest to that of a levying judgment creditor of the corporation, does not appear significant, since Peacock's status was to be in no event worse than that of a general creditor of the corporation.

5. While the court below found that payments were *in fact* made from rentals derived from the warehouse, this is far different from a finding that payments were not to be made if corporate earnings were insufficient, and we think it immaterial that business prospects of the corporation were so favorable that earnings

cash advances are made to commence the corporate life. See also Stevens, Corporations (2d Ed.) 415–418, where in addition to these factors, the granting of voting power to so-called creditors and the absence of a fixed maturity date of a "debt" are cited as indicia of a capital contribution rather than a loan or sale. The absence here of any provision for interest does not seem to us to be an indication that this was not a sale, particularly where Peacock was the sole stockholder; the purchase price in a sale can of course be stated in a lump sum payable in installments without differentiation of principal and interest, or for that matter without interest.

On the other hand, the provision for fixed payments without regard to corporate earnings in the present case is evidence that a debt actually was created. The language of the document and the book entries are further evidence that a sale took place. Welp v. United States, 8 Cir., 201 F.2d 128, 131. This is sufficient evidence to rebut the presumption of correctness with which the Commissioner's determinations are clothed, and the trial court was clearly wrong in finding that the transaction was a contribution to capital and not a sale.

Furthermore, the taxpayer cites two Tax Court cases which it says squarely support its contention that the transaction was a sale which entitled it to a higher tax basis. It seems to us that those cases are in point and that the Government has not succeeded in distinguishing them. Herff & Dittmar Land Co., 32 B.T.A. 349, Acq. XIV–2 C.B. 10; Hollywood, Inc., 10 T.C. 175. Acq. 1948–1 C. B. 2. The case of Curran v. Commissioner, 8 Cir., 49 F.2d 129, also supports our decision. There the transaction was given effect as a sale even though payment for the property was denominated a "dividend," and there was no written contract of sale.[6] We also consider it significant that Congress ●has since amended the Internal Revenue Code for the manifest purpose of preventing further use of this very method of reducing taxes;[7] that the Commissioner has acquiesced in the Herff and Hollywood cases, supra, and that many taxpayers may have relied on these decisions. The policies underlying the *stare decisis* principle are especially important where there may have been such reliance, and they alone would be enough to sustain our present holding in the absence of any cases to the contrary.

The judgment is therefore reversed, and the cause is remanded for entry of judgment in favor of the taxpayer consistent with this opinion.

sufficient to make the payments were reasonably expectable. After all, this is true in most prudent sales on credit. What is significant is that the contractual documents provided for payments which were not conditional on earnings, and for acceleration of the balance in case of a default in the payment of any installment.

6. There was in that case, however, other strong evidence that a sale was actually intended.

7. 26 U.S.C.A. § 117(*o*), which provides

that where an individual sells depreciable property to a controlled corporation, any gain realized will be taxed to the seller as ordinary income, and not as a capital gain. The House Ways and Means Committee Report, H.Rep. 586, Sec. F. 82d Cong., 1st Sess., said that this section "is intended to forestall the practice of selling depreciable assets to controlled corporations *in order to obtain the substantial tax benefits available under existing law.*" (Emphasis added).