*Decision will be entered under Rule 50.*

GREAT AMERICAN INDUSTRIES, INC. (FORMERLY SALTA CORPORATION), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 24797. Filed March 8, 1956.

*Brady O. Bryson, Esq.*, and *Thomas V. Lefevre, Esq.*, for the petitioner.

*Maurice S. Bush, Esq.*, and *Francis X. Gallagher, Esq.*, for the respondent.

¹ Included herein (and reflected in the net worth) is a $30,000 valuation (less depreciation allowances of $5,400) ascribed by VRC's directors to a contract relating to the acquisition of fixed assets and other rights.

² As of December 31, 1940, VRC had capital stock of $50,000 stated value, capital surplus of $50,000 and a $27,296.39 deficit in earned surplus. The sum of these figures is $72,703.61.

## OPINION.

BLACK, *Judge:* The controversy in this case is whether petitioner, in computing its invested capital credit for purposes of arriving at its 1941 excess profits tax liability, may determine its equity invested capital under section 718 of the 1939 Code. Petitioner maintains that it is entitled and required to use section 718, thus determining its equity invested capital on a historical basis commencing with its incorporation in 1928. The provisions of section 718 which are applicable hereto are printed in the margin.[1] The parties have stipulated that, if section 718 is applicable, petitioner's equity invested capital computed thereunder as of January 1, 1941, is at least $25,521,939.63, which the parties agree is more than sufficient to eliminate petitioner's excess profits tax liability for 1941.

Respondent contends, relying on *Gregory* v. *Helvering*, 293 U. S. 465, and *Higgins* v. *Smith*, 308 U. S. 473, that the series of transactions culminating in Odlum's purchase of petitioner's stock from Atlas and his liquidation of V. R. C. into petitioner, was a scheme with no business purpose other than the evasion or avoidance of excess profits taxes by giving V. R. C. the benefit of petitioner's high equity invested capital. He, therefore, argues that petitioner's equity invested capital must be

---

[1] SEC. 718. EQUITY INVESTED CAPITAL.

(a) DEFINITION.—The equity invested capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following amounts, reduced as provided in subsection (b)—

(1) MONEY PAID IN.—Money previously paid in for stock, or as paid-in surplus, or as a contribution to capital;

(2) PROPERTY PAID IN.—Property (other than money) previously paid in (regardless of the time paid in) for stock, or as paid-in surplus, or as a contribution to capital. Such property shall be included in an amount equal to its basis (unadjusted) for determining loss upon sale or exchange. If the property was disposed of before such taxable year, such basis shall be determined in the same manner as if the property were still held at the beginning of such taxable year. If such unadjusted basis is a substituted basis it shall be adjusted, with respect to the period before the property was paid in, in the manner provided in section 113 (b) (2) ;

(3) DISTRIBUTIONS IN STOCK.—Distributions in stock—

(A) Made prior to such taxable year to the extent to which they are considered distributions of earnings and profits ; and

(B) Previously made during such taxable year to the extent to which they are considered distributions of earnings and profits other than earnings and profits of such taxable year ;

(4) EARNINGS AND PROFITS AT BEGINNING OF YEAR.—The accumulated earnings and profits as of the beginning of such taxable year ;

computed pursuant to the method prescribed in section 723 of the 1939 Code.[2] Such computation, if the Commissioner is entitled to make it under the method prescribed in section 723, would give petitioner an equity invested capital of $378,448.54 as of the beginning of 1941, and would result in its being liable for excess profits taxes for that year, as respondent has determined in his deficiency notice.

Respondent, in support of his aforementioned position, also argues that following petitioner's December 28, 1940, distribution of certain securities to Atlas (leaving it with cash plus marketable securities in the Chrysler, International Harvester, and United Fruit companies) petitioner was "essentially an empty corporate shell" and that under *Ward M. Canaday, Inc.*, 29 B. T. A. 355, affd. (C. A. 3) 76 F. 2d 278, certiorari denied 296 U. S. 612, and *Kent Oil Co.*, 38 B. T. A. 528, "an empty corporate shell later revived by new stockholders and a new kind of business cannot be used as a shield against tax liabilities otherwise due."[3] The short answer to this latter argument is that it must fail because the major premise upon which it rests, viz, that petitioner became an empty corporate shell, is not true. True it is that, as a result of the December 28 distribution to Atlas, petitioner's net assets were reduced from over $5,000,000 to $234,075.02, but we do not think it is unrealistic to conclude that those remaining assets were still substantial. Petitioner was not left a mere shell. It still had assets of approximately $235,000, with substantially no liabilities. The major portion of those assets ($159,012.50) consisted of securities in three companies, namely, Chrysler Corporation, International Harvester Company, and United Fruit Company. These securities were readily marketable and did not represent deadwood assets. We conclude that there are important factual differences between the instant case and the *Canaday* and *Kent Oil* cases, both *supra*, and that, consequently, respondent cannot be sustained in his attempt to here apply those decisions.

We next consider whether respondent is correct in his contention that the "business purpose" doctrine of *Gregory* v. *Helvering* and

[2] SEC. 723. EQUITY INVESTED CAPITAL IN SPECIAL CASES.

Where the Commissioner determines that the equity invested capital as of the beginning of the taxpayer's first taxable year under this subchapter cannot be determined in accordance with section 718, the equity invested capital as of the beginning of such year shall be an amount equal to the sum of (a) the money plus (b) the aggregate of the adjusted basis of the assets of the taxpayer held by the taxpayer at such time, such sum being reduced by the indebtedness outstanding at such time. The amount of the money, assets, and indebtedness at such time shall be determined in accordance with rules and regulations prescribed by the Commissioner with the approval of the Secretary. In such case, the equity invested capital for each day after the beginning of the taxpayer's first taxable year under this subchapter shall be determined, in accordance with rules and regulations prescribed by the Commissioner with the approval of the Secretary, using as the basic figure the equity invested capital as so determined.

[3] Respondent correctly recognizes that section 129 of the 1939 Code "has no application to the instant case because it was made to apply to taxable years beginning after December 31, 1943" and because it "also otherwise appears to be inapplicable." See *Alprosa Watch Corporation*, 11 T. C. 240.

*Higgins* v. *Smith*, both *supra*, requires that petitioner's equity invested capital be computed pursuant to the method prescribed in section 723, rather than that in section 718 of the 1939 Code. Although respondent's argument is phrased somewhat differently from that made by him in *Alprosa Watch Corporation*, 11 T. C. 240, it is in essence the same and, just as in that case, the record here compels us to decide against respondent. In the *Alprosa Watch Corporation* case, respondent argued "that the whole transaction was unrealistic, served no business purpose, and should be rejected on the authority of *Gregory* v. *Helvering*, * * * and *Higgins* v. *Smith*, * * *." We rejected respondent's argument and held that the transactions in that case were not mere form but had substance and that *Gregory* v. *Helvering* and *Higgins* v. *Smith* did not apply.

The question here is largely one of fact and we have found, after a careful consideration of the entire record, that the avoidance or evasion of excess profits taxes (through use of petitioner's historic equity invested capital) was not Odlum's sole or principal purpose in acquiring petitioner and liquidating V. R. C. into it. Each step in the transaction before us, and the transaction as a whole, had substance as well as form and we cannot say that the hallmark of sham is here present.

We have made detailed findings of fact in this case which support our conclusion. It is unnecessary to restate them here except to note the following salient points:

At least as early as June 1940, well before the passage of the excess profits tax law in October, Atlas officials were considering the rehabilitation, and either sale or liquidation, of petitioner as a step in the simplification of Atlas' corporate structure. The pendency of the Investment Company Act of 1940 (which became effective November 1, 1940) acted as a spur to the simplification program since, after its passage, that Act would require S. E. C. approval of transactions between investment companies and their affiliates, thus increasing Atlas' administrative burdens. Following the passage of the Investment Company Act of 1940, petitioner was rehabilitated and made ready for sale.

Late in 1940, Atlas' tax man, Charles Reuter, felt that a certain tax loss which Atlas intended to claim on its 1940 return might be disallowed and, therefore, that Atlas needed to realize an additional tax loss were it to be assured that it would have no taxable income for 1940 and that the distributions made to its stockholders would not be taxable to them as ordinary dividend income. It was decided to realize the additional tax loss by selling petitioner's stock (on which Atlas had a high basis) at its book value plus $1,000, after first having petitioner distribute to Atlas those securities in petitioner's portfolio which, for one reason or another, Atlas decided to retain. Ridding

itself of petitioner's stock would also help to accomplish Atlas' objective of simplification of its corporate structure. These, then, were the motives behind Atlas' sale of petitioner's stock and we think it clear that the sale of stock was bona fide. Atlas no longer owned the stock and Odlum unquestionably became its owner. *Sun Properties, Inc.* v. *United States,* (C. A. 5) 220 F. 2d 171.

Odlum agreed to purchase petitioner's stock from Atlas only because no other purchaser could be found and there was little time remaining in 1940 within which to make the sale. We are convinced that Odlum's principal purpose in making that purchase was to aid Atlas in its dual objectives of realizing an additional tax loss in 1940 and simplifying its corporate structure. Odlum is closely identified with Atlas and the testimony shows that he is regarded as its guiding force.

Soon after acquisition of petitioner's stock from Atlas, Odlum contributed his stock in V. R. C. to petitioner and caused V. R. C. to be liquidated into petitioner with a view of changing petitioner into an operating company instead of an investment company. A major reason for this action was to give V. R. C. the benefit of petitioner's cash and liquid assets. Odlum had been advancing money to V. R. C. over a period of years and, at the end of 1940, V. R. C. was indebted to him in the total amount of $126,709.39. V. R. C. wished to stockpile rubber in anticipation of supply shortages occasioned by World War II and to expand its facilities (which facilities were, in fact, expanded in 1941). Additional cash was deemed necessary for these purposes. Odlum felt that liquidation of V. R. C. into petitioner was the best way to provide for that cash need and would obviate his having to make a series of further personal advances to V. R. C.

Odlum was also aware of the excess profits tax advantages that would result from his liquidation of V. R. C. into petitioner, but the law is clear that a taxpayer may arrange his affairs so as to minimize or altogether avoid taxes so long as the transactions he utilizes toward that end have substance and reality and are not a mere sham. *Chisholm* v. *Commissioner,* (C. A. 2) 79 F. 2d 14, certiorari denied 296 U. S. 641; *Chamberlin* v. *Commissioner,* (C. A. 6) 207 F. 2d 462, certiorari denied 347 U. S. 918. That legal principle, incidentally, effectively answers the many suggestions in respondent's brief of other methods, more expensive taxwise, which Odlum might have utilized to handle the entire matter.

After the completion of the above-described transactions petitioner began and continued to engage in the manufacture and sale of Rubatex. It has also engaged in other lines of business. *Chisholm* v. *Commissioner, supra.* The change in petitioner's character, from an investment company to an operating company, does not prejudice its case. *Alprosa Watch Corporation, supra; WAGE, Inc.,* 19 T. C. 249.

In light of what we have above said, it is our holding that the transactions here involved may not be denied recognition under the doctrine of *Gregory* v. *Helvering* and *Higgins* v. *Smith*, both *supra*, and that petitioner is entitled and required to compute its equity invested capital for 1941 under section 718 of the 1939 Code. It certainly cannot be said that it is impossible to compute petitioner's equity invested capital under the provisions of section 718 because the parties have stipulated that:

> Assuming that the Tax Court determines that the petitioner is entitled to compute its equity invested capital under the provisions of section 718 of the Internal Revenue Code rather than under the provisions of section 723 of the Code as determined by the respondent in the notice of deficiency * * * then and in that case the parties are agreed that the petitioner is entitled to a minimum equity invested capital at the beginning of such taxable year under the provisions of section 718 of the Code of $25,521,939.63 * * *

The Commissioner is only authorized to compute a taxpayer corporation's equity invested capital in *special* cases under section 723 and those special cases are described as follows in section 723:

> Where the Commissioner determines that the equity invested capital as of the beginning of the taxpayer's first taxable year under this subchapter *cannot be determined in accordance with section 718,* the equity invested capital as of the beginning of such year shall be an amount equal to the sum of * * * [Emphasis supplied.]

Now it is true that the Commissioner in his deficiency notice determined petitioner's equity invested capital under the method prescribed by section 723, but if he did so under the theory that petitioner's equity invested capital cannot be computed under section 718 of the Code he clearly erred. And it must be kept in mind, as we have already endeavored to emphasize, that the Commissioner is only authorized to use the method prescribed in section 723 in those special cases where the corporation's equity invested capital cannot be determined under section 718. That situation does not exist here. On this issue we hold for petitioner.

*Decision will be entered under Rule 50.*