**GENERAL GEOPHYSICAL COMPANY,**
**Plaintiff,**

v.

**UNITED STATES of America,**
**Defendant.**

**No. 11266.**

United States District Court
S. D. Texas,
Houston Division.

Aug. 5, 1959.

Baker, Botts, Andrews & Shepherd, Homer L. Bruce and John D. Kirkland, Houston, Tex., for plaintiff.

Charles K. Rice, Asst. Atty. Gen., James P. Garland, Lyle M. Turner, and Charles Mehaffy, Attys., Dept. of Justice, Washington, D. C., and William B. Butler, U. S. Atty., and Randolph F. Wheless, Jr., Asst. U. S. Atty., Houston, Tex., for defendant.

INGRAHAM, District Judge.

This is a suit to recover internal revenue taxes and interest paid thereon alleged to have been erroneously and illegally assessed and collected from plaintiff by defendant.

In this cause plaintiff alleges that on February 25, 1954, it distributed certain of its assets to the Estate of Earle W. Johnson, Deceased, and Mrs. Virginia Johnson in retirement of part of their stock in plaintiff, and that thereafter on February 25, 1954, plaintiff bought those assets from the estate and Mrs. Johnson for $746,525. Plaintiff computed, and reported on its income tax return for 1954, its income tax liability for 1954 on the basis that its basis for those assets from and after February 25, 1954, was $746,525. The Commissioner of Internal Revenue refused to recognize said distribution to, and purchase from, the estate and Mrs. Johnson and determined plaintiff's income tax liability for 1954 on the basis that plaintiff's basis for said properties was the same as their basis in the hands of plaintiff prior to said alleged distribution on February 25, 1954. The first issue is as to whether or not the Commissioner of Internal Revenue was correct in so holding.

At a pre-trial conference held on January 28, 1959, the court entered an order that this first issue should be tried first. This cause came on regularly for trial of this first issue before the court sitting without a jury by consent of the parties, and the plaintiff and defendant appeared

by their respective attorneys, and both oral and documentary evidence having been introduced at the trial thereof and the evidence being closed, and the said first issue submitted to the court for decision, the court makes the following findings of fact and conclusions of law on said first issue:

### Findings of Fact

1. This cause arises under the Internal Revenue Code of 1954, and in it plaintiff seeks to recover from the defendant for the year 1954 certain amounts of income taxes and interest paid by it to the defendant and which plaintiff claims were erroneously collected from it by the defendant.

2. The court finds the facts as admitted by the pleadings and as hereinafter set forth.

3. Earle W. Johnson (herein called Johnson) was a geophysicist and founded plaintiff in 1935 to carry on seismograph surveys for oil companies and operators in the search for oil and gas.

The plaintiff was very successful due in large part to Johnson's ability and standing in the industry.

4. In August, 1953, Johnson died suddenly. By his will he left his estate in trust for certain beneficiaries with the Second National Bank of Houston as executor and trustee. His stock in plaintiff was community property of himself and widow, Mrs. Virginia Johnson, and after his death was held one-half by the Bank as executor and one-half by his widow.

5. At Johnson's death the other officers of plaintiff were Chester Sappington, T. O. Hall and Albert B. Grubb, who had always worked under Johnson's direction. Plaintiff's capital consisted of 1,610 shares of Class A and 4,851 shares of Class B Common Stock, both classes being identical except Class A was non-voting. Among the stockholders were Mrs. Howell A. Johnson, the mother of Johnson, and a long time friend, Paul L. Davis. On February 25, 1954, plaintiff's stock was owned as follows:

| Name | Number of Shares | |
| --- | --- | --- |
| | Class A | Class B |
| Sappington | 350 | 125 |
| Hall | 350 | 125 |
| Grubb | 20 | |
| Johnson Estate | 200 | 1,530½ |
| Mrs. Virginia Johnson | 200 | 1,530½ |
| Mrs. Howell A. Johnson | | 770 |
| Paul L. Davis | | 770 |
| 12 others | 490 | |
| | 1,610 | 4,851 |

6. The stock in plaintiff held by the Johnsons represented by far the greater part of their assets. The Bank and Mrs. Johnson realized that neither of them could contribute anything of value in running plaintiff's business and felt that, if plaintiff were liquidated and its properties sold, they would realize far less than the value of their stock in a going concern. The officers of the plaintiff, Sappington, Hall and Grubb felt that they could continue the plaintiff as a successful company but felt that, after the Johnsons had realized the then fair value of the stock, any future earnings should enure to them as officers and the other stockholders. It was realized by all parties that, if the stock of the Johnson Estate and Mrs. Virginia Johnson were retired, the stock of Mrs. Howell A.

Johnson and Paul L. Davis should be retired on the same basis. After long negotiations it was agreed between the officers of plaintiff, the Johnson Estate, the two Mrs. Johnsons and Davis that a fair price at which their stock should be retired would be $245 per share which for their 5,001 shares would amount to $1,225,245. On July 31, 1953, the Company had an earned surplus of $1,738,944.56 and its surplus on February 25, 1954, was greater than that amount. The attorneys for plaintiff and the Bank advised them that, since the plaintiff had an earned surplus of over $1,225,245, the plaintiff could legally retire the 5,001 shares by paying the holders the $1,225,245 and amending its charter by reducing its authorized capital by the 5,001 shares.

7. As the plaintiff did not have $1,225,245 in cash, its officers proposed to the Bank as executor and the other stockholders that plaintiff would retire their stock by paying part cash and giving them plaintiff's notes for the balance. However, the attorneys for the Bank advised the Bank and the other three stockholders that, in the light of the decision of the Circuit Court of Appeals for the Fifth Circuit in Robinson v. Wangemann, 75 F.2d 756, and other authorities, if they took notes of the plaintiff in part payment for their stock and plaintiff later failed and went into bankruptcy while any of the notes were unpaid, all other creditors of the plaintiff, then existing and future creditors, would come ahead of them as holders of the notes. Said attorneys advised the Bank as executor of the Johnson Estate that it ought not in its fiduciary capacity as executor to subject the Estate to this risk. In the light of this advice the Bank as executor, the two Mrs. Johnsons and Mr. Davis refused to accept the plaintiff's proposal.

8. Said attorneys of the Bank further advised the Bank as executor and the other three stockholders that, since the plaintiff had an earned surplus of more than $1,225,245, the plaintiff could legally retire their stock by paying part cash and paying the remainder by transferring to them property of a fair value equal to no more than such remainder if plaintiff would still have an earned surplus. The Bank as executor and the other three stockholders thereupon proposed to plaintiff that their stock should be retired in that manner, with the Bank as executor and Mrs. Virginia Johnson accepting part payment in property and part in cash and Mrs. Howell A. Johnson and Davis being paid in cash.

9. The plaintiff and the Bank as executor and Mrs. Virginia Johnson then agreed upon certain properties to be transferred to them and a list thereof was prepared on which the value of each piece of property was set out as agreed upon between the three parties, the total of said values being $746,525. The said four stockholders thereupon made a proposal to the plaintiff that they would be willing for plaintiff to retire their 5,001 shares at $245 per share for the following considerations:

Johnson Estate and
Mrs. Virginia Johnson

| | | |
|---|---|---|
| Cash | $101,420.00 | |
| Said property | 746,525.00 | $ 847,945.00 |
| Mrs. Howell A. Johnson—Cash | | 188,650.00 |
| Paul L. Davis—Cash | | 188,650.00 |
| | | $1,225,245.00 |

10. On February 25, 1954, a stockholders' meeting of plaintiff was held at which all the stockholders were present in person or by proxy and at that meeting it was unanimously voted to authorize the officers to accept the proposals and to carry them out, to retire the 5,001 shares of stock and to amend the charter of the plaintiff to show the retirement of the 5,001 shares in the authorized capital. The proposals were promptly accepted by the plaintiff, the cash called for in the proposals was paid and the properties covered by the proposal of the Estate and Mrs. Virginia Johnson were conveyed to them, except that at their request the motor vehicles and accessories were conveyed to them in the name of Homer E. Henderson. The certificates for the 5,001 shares were duly surrendered and cancelled and appropriate amendment to the charter was duly filed with the Secretary of State of Colorado, the state in which the plaintiff was incorporated, eliminating the 5,001 shares in the authorized capital of the plaintiff. After those transactions the plaintiff still had a large earned surplus. Thereafter neither the Johnson Estate, Mrs. Virginia Johnson, Mrs. Howell A. Johnson nor Paul L. Davis has ever owned any stock in plaintiff.

11. At the time of those transactions there was no agreement of any kind between the plaintiff and the Johnson Estate and Mrs. Virginia Johnson as to said properties, either as to what the latter would do with the properties or in any other way. The latter two owned them absolutely and were perfectly free to do with them as they might desire.

12. Thereafter the Bank as executor and Mrs. Virginia M. Johnson presented to the plaintiff a proposal as follows:

a. The Estate and Mrs. Virginia Johnson would sell to the plaintiff the properties received by them at certain values, being the same as those at which they had received them.

b. In payment for the properties the plaintiff would execute its note to the Estate for $373,262.50, bearing 5% interest, principal payable in monthly installments of $5,500 beginning April 1, 1954, with the balance due on March 1, 1959, and a similar note payable to Mrs. Virginia M. Johnson. The two notes totaled $746,525, the agreed price for the properties.

c. The Estate would loan the plaintiff $328,900 for which it would execute its two notes to the Estate for $164,450 each, bearing 5% interest, principal payable in monthly installments of $2,420 beginning April 1, 1954, with the balance due on March 1, 1959.

d. All four notes were to be secured by a deed of trust upon said properties and other properties of the plaintiff.

13. The plaintiff accepted the proposal, the properties were conveyed to the plaintiff, the Estate made the loan to the plaintiff, and the plaintiff executed and delivered the notes and the deed of trust, all of which occurred on February 25, 1954. All of the notes have been paid in full by the plaintiff, the last payments thereon having been made during the first part of 1959.

14. By said last transaction the plaintiff bought the properties for the total of $746,525.

15. The proposal of the Johnson Estate, the two Mrs. Johnsons and Davis to the plaintiff as outlined above as to how their stock should be retired was not originated by the plaintiff. It was originated by the Bank as executor and the two Mrs. Johnsons and Davis and the latter advised the plaintiff that that was the only manner that was acceptable to those four stockholders for plaintiff to retire the 5,001 shares.

Conclusions of Law

1. The court has jurisdiction of the subject matter of, and the parties to, this cause.

2. If the plaintiff had retired the stock of the Estate, Mrs. Virginia Johnson, Mrs. Howell A. Johnson and Paul L. Davis by paying them part cash and giving them notes for the balance of the consideration and plaintiff had gone into bankruptcy prior to the payment in

full of the notes, all other creditors of the plaintiff would have been preferred in the distribution of the plaintiff's assets over the holders of those notes. Robinson v. Wangemann, 5 Cir., 75 F.2d 756. The Bank as executor of the Estate was acting in a fiduciary capacity and was entirely justified in refusing to accept notes of the Company for any part of the consideration paid to it in retirement of the stock that it held as executor and thereby subjecting the Estate to this risk in the event of the bankruptcy of the plaintiff. The Bank as executor and the other three stockholders in refusing to accept notes of the plaintiff for part of the consideration for the retirement of their stock were actuated by a genuine business purpose so as to avoid this risk that might arise in the bankruptcy of plaintiff.

3. Upon the transfer by plaintiff to the Bank as executor and Mrs. Virginia Johnson of the properties involved in this cause, the latter two obtained title to those properties free and clear of any claim on the part of plaintiff.

4. The transaction in which the stock of said four stockholders was retired was entirely separate and distinct from the transaction in which the Bank as executor and Mrs. Virginia Johnson sold the properties involved in this case to the plaintiff for the sum of $746,525. The substance of those two transactions was exactly like the form which they took. This court would not be justified in disregarding the form which these transactions took and in holding that they should be treated as if said properties had not been conveyed to the Bank as executor and Mrs. Virginia Johnson and had not been sold by the latter two to the plaintiff and in holding that the transaction should be simply treated as if the plaintiff had retired the stock of these four stockholders by paying them part cash and giving them notes for the balance of the consideration. Sun Properties, Inc. v. United States, 5 Cir., 220 F.2d 171.

5. The transaction in which the Bank as executor and Mrs. Virginia Johnson sold the properties to plaintiff for $746,525 was a bona fide transaction and is recognized by the court as an actual sale by those two parties of said properties to the plaintiff.

6. On and after February 25, 1954, plaintiff's basis for said properties involved in this cause for the purpose of computing its income tax liability was $746,525, and the Commissioner of Internal Revenue erred in holding that plaintiff's basis for said properties was the same as their basis in the hands of the plaintiff prior to its distribution of them on February 25, 1954, to the Bank as executor and Mrs. Virginia Johnson.

The clerk will forward copies hereof to the attorneys of record, who will draft and submit judgment accordingly.